IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES,

        Plaintiff,

v.                                                Case No.  21-10010-JWB

MONTREZ D. BROWN,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to suppress and for a *Franks* hearing. (Doc. 27.)  The motion has been fully briefed and the court held an evidentiary hearing on January 31, 2022.   (Docs. 28, 36, 37, 38, 39, 40.)  For the reasons provided herein, Defendant's motion to suppress is DENIED.[1]

**I.**      **Facts**

**The Affidavit in support of the search warrant.**

On December 20, 2018, Special Agent of the Department of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Aaron Chaffee submitted an affidavit in support of his application for a search warrant to search the premises of 632 North Baehr, Wichita, Kansas ("632 N. Baehr").  The application stated that the search was related to a violation of 21 U.S.C. § 844, possession of marijuana.   The affidavit begins by detailing Agent Chaffee's extensive experience in law enforcement, which includes several years working in violent crimes, gang crimes, and drug related investigations.  (Doc. 37 at ¶ 1.)  Agent Chaffee also states that the affidavit only contains

---

[1] As discussed herein, the court granted the motion for a *Franks* hearing during the evidentiary hearing on January 31, 2022.

the facts necessary to establish probable cause and that the affidavit does not describe all of the facts that are relevant to the investigation. (*Id.* at ¶ 4.)

The affidavit referred to 632 N. Baehr as "subject premises #2," and referred to 630 N. Baehr as "subject premises #1."[2]  The premises is a duplex and both sides are part of a single structure. The affidavit refers to both premises as the "subject premises." (*Id.* at ¶ 3.) The affidavit sufficiently describes both subject premises #1 and #2. (*Id.* at ¶ 5.)

In September 2018, Agent Chaffee learned that the Wichita Police Department received an anonymous complaint stating that Calvin Williams was selling drugs, including methamphetamine, from 632 N. Baehr. After receiving this tip, Agent Chaffee began conducting surveillance at the location. (*Id.* at ¶ 8.)  During the surveillance, numerous documented gang members were seen at 630 N. Baehr. There were numerous observed interactions between Williams and the tenant of 630 N. Baehr. The surveillance also revealed that Defendant Brown was the primary resident of 632 N. Baehr and Williams would frequent 632 N. Baehr, even when Defendant was not at the residence.[3]  (*Id.*)

Throughout the investigation, and in connection with information received pursuant to federal search warrants, Agent Chaffee received social media and cellular telephone content of Defendant's associates, including Erik Dixon. At the time of the affidavit, Dixon was indicted for numerous drug trafficking violations and firearm violations. (*Id.* at ¶ 13.) There were numerous conversations between Defendant and Dixon discussing selling drugs, including marijuana. Agent Chaffee located a photograph in Dixon's phone which showed a drug ledger with names, prices,

---

[2] Probable cause as to 630 N. Baehr is not at issue here. Although the affidavit includes statements regarding that premises, those statements will only be included to the extent they are necessary to this court's analysis.
[3] This fact is taken from paragraph eight of the affidavit. The evidence at the *Franks* hearing established that Brown was observed moving into 632 N. Baehr on November 12, 2018, and Williams appeared to move out of the residence on that same date.

and dates.  On this ledger, dated on or around February 2017, was the name "9t," amount owed "$1750" and owed by "3/1." (*Id.*)  There are no further date references in the affidavit with respect to other conversations between Dixon and Defendant.

Agent Chaffee also conducted interviews with "cooperating defendants" who described Williams, Defendant, Tyrin Powell, Damazje Parker, and Donald Jackson being involved in drug sales, gang activity, and possessing firearms.  These individuals were observed during surveillance at 632 N. Baehr.  (*Id.* at ¶ 14.)  Defendant, who is the primary resident of 632 N. Baehr, has the following criminal history: 2010, Juvenile adjudication for possession of marijuana; 2012, conviction for aggravated battery; 2016, two arrests for felon in possession of a firearm; 2018, arrest for aggravated battery firearms.  (*Id.* at ¶ 16.)  Williams also has a criminal history, including a 2007 conviction for conspiracy to participate in a racketeer influenced and corrupt organization involving the Wichita Crips and drug trafficking and an arrest in 2016 in which he had several pounds of methamphetamine in his rental car.  (*Id.* at ¶ 17.)  Later arrests involve assault, traffic violations, and disorderly conduct.

On November 19, 2018, Agent Chaffee and other officers conducted a trash pull on "the trash can for 632 North Baehr [] locating small amounts of marijuana consistent with the use of marijuana."  (*Id.* at ¶ 9.)  A trash pull for the "trash can for 630 North Baehr" was conducted on November 20, 2018.  (*Id.* at ¶ 10.)  The search of the trash bags for 630 N. Baehr resulted in the seizure of sandwich baggies which tested positive for the presence of methamphetamine.  Agent Chaffee also stated that there was a large number of persons coming to 630 N. Baehr and only staying for a short time period.  The presence of the baggies in the trash and the traffic at 630 N. Baehr indicated to Agent Chaffee that drug sales were occurring at 630 N. Baehr.  (*Id.*)  On December 11, another trash pull was conducted for 630 N. Baehr and it resulted in the seizure of

sandwich baggies which again tested positive for methamphetamine. (*Id.* at ¶ 11.) On December 17, 2018, Agent Chaffee "conducted a second trash pull on the trash can for 632 North Baehr [] locating small amounts of marijuana consistent with the use of marijuana." (*Id.* at ¶ 12.)

In conclusion, Agent Chaffee stated that he believed that there was probable cause to believe that evidence of possession with intent to distribute and distribution of a controlled substance in violation of 21 U.C.S. § 841 and possession of firearms by prohibited person in violation of 18 U.S.C. § 922 would be found in the subject premises. (Doc. 37 at ¶ 20.) The application indicated on attachment B that the items to be seized from 632 N. Baehr which constituted evidence of a crime included marijuana, items associated with the use of marijuana, and indicia of ownership or control of the premises. (*Id.* at 14.)

United States Magistrate Judge Kenneth Gale authorized a search warrant for 632 N. Baehr. The search warrant was to be executed on or before January 3, 2019, and the items to be seized included indicia of ownership and marijuana. (*Id.* at 15-17.) The search warrant was executed on December 27, 2018. During the search, law enforcement located firearms and clear baggies containing a variety of prescription pills. Agent Chaffe then submitted an application for a search warrant for 632 N. Baehr which sought permission to seize firearms, prescription pills, and other items related to drug trafficking. (Doc. 38.) Magistrate Judge Gale authorized the search warrant and the firearms along with ammunition were seized.

On February 23, 2021, the grand jury returned an indictment charging Defendant with possession of a firearm by a convicted felon and possession of ammunition by a convicted felon both in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Defendant now moves to suppress the items seized from 632 N. Baehr on the basis that the initial search warrant was issued without probable cause. Defendant also moved for a *Franks* hearing on the basis that statements in the affidavit

were false or that Agent Chaffee omitted material information from the affidavit.  *Franks v. Delaware*, 438 U.S. 154 (1978).  In response, the government argues that the affidavit contains sufficient information for the court to conclude there was probable cause that evidence of criminal activity would be found in the house.  Alternatively, the government argues that the court should not exclude the evidence under the good faith exception to the exclusionary rule.

**Agent Chaffee Testimony**

After review of Defendant's motion for a *Franks* hearing and supporting proffer, the court granted the motion and allowed Defendant to present testimony from Agent Chaffee.  Based on the testimony, the court finds that Agent Chaffee did not present false testimony to Magistrate Judge Gale.  Moreover, Agent Chaffee did not intentionally omit any material information from the application for the search warrant.  Agent Chaffee's testimony in part, is set forth herein. Additional testimony is discussed throughout the court's order.

After receiving the September 2018 tip regarding Williams, law enforcement placed a pole camera across the street from 632 N. Baehr.  The pole camera faced the driveway and windows of 632 N. Baehr.  Due to the position of the pole camera, when reviewing the video footage, law enforcement could not determine which residence was visited by certain individuals because the view of the doors to both residences were not in view of the camera.

Based on the video surveillance, on November 12, 2018, it appeared that Williams moved out of and Defendant moved into 632 N. Baehr.  Williams had been seen taking the trash can for 632 N. Baehr to the curb sometime in October 2018 and Defendant was seen taking the trash can back to the residence in November and December 2018.  Based on the surveillance, it was determined that the trash service for 630 and 632 N. Baehr occurred on different days of the week and were serviced by different companies.  Both trash cans were never observed to be out for

collection on the same day.  The trash for 632 N. Baehr was picked up on Monday mornings.  Also, the trash cans for each residence were placed in different locations at the duplex and the trash cans were different sizes.  As such, Agent Chaffee was confident that the trash pulls on November 19 and December 17 were performed on the trash can for 632 N. Baehr.

During the hearing, exhibits identifying location of the trash can prior to the trash pull were admitted into evidence.  On November 18, the evening before the trash pull, the video from the pole camera showed the trash can next to the mailbox and on the curb by the street.  Agent Chaffee testified that this trash can was the can that belonged to 632 N. Baehr.

On November 19, 2018, the trash was removed from the trash can and contained eight trash bags.  The search revealed a marijuana roach in bag one.  This was field tested and it tested positive for THC.  A second bag revealed two marijuana stems but they were not tested.  Agent Chaffee testified that he had extensive experience in illegal substances and based on his experience believed that the substance found in the trash bags was marijuana.  The trash bags also contained documents addressed to 632 N. Baehr and, although there were no documents addressed to Defendant, there were documents related to Williams.  Defendant was then observed on the pole camera video taking the trash can back to the residence after the trash pull.

On December 17, the trash was again pulled from the same location at the curb.  The trash contained five trash bags.  This search of those bags revealed the remains of a smoked marijuana blunt, a plastic baggie with marijuana residue, and some flakes of marijuana.  A field test was conducted on the marijuana and it was positive for marijuana.  Agent Chaffee also testified that there were indicia as to 632 N. Baehr in that trash pull, including a document with Defendant's name on it.  The pole camera also captured Defendant taking the trash can back to the residence later the same day.  Agent Chaffee testified that he did not include the indicia discovered in both

trash pulls in the affidavit because he believed that his affidavit was sufficient to tie the residence to the trash pulls.

## II.      Analysis

### A.      Probable Cause

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The validity of a warrant is not determined by "nit-picking" discrete portions of the application.  Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review the sufficiency of the affidavit upon which a warrant was issued by looking at the totality of the circumstances and simply ensuring that the issuing magistrate had a substantial basis for concluding that probable cause existed." (internal citation omitted)).  The court gives great deference to a search warrant that was reviewed and signed by an experienced judge.  *See United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Price*, 265 F.3d 1097, 1101 (10th Cir. 2001).

Probable cause to issue a search warrant exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched."  *Harris*, 369 F.3d at 1165 (quoting *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1330 (10th Cir. 2003)).  Probable cause, however, "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."

7

*United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (citing *United States v. Mathis*, 357 F.3d 1200, 1206–07 (10th Cir. 2004)).  In determining if information is too stale to support a finding of probable cause, the court looks at "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  *Id.*

Turning to the affidavit, Defendant argues that several statements in the affidavit cannot support a finding of probable cause for various reasons.  The court will address them in turn.

### 1.    Anonymous tip and cooperating defendants

First, Defendant argues that the anonymous tip cannot support a finding of probable cause because the affidavit did not provide a sufficient basis to determine the informant's veracity and reliability.  Similarly, Defendant argues that the statements by "cooperating defendants" cannot support a finding by probable cause because the affidavit is silent on their identity and there is no information that would explain the basis of their knowledge, their reliability or credibility.  In response, the government does not address this argument.  Rather, the government argues that the affidavit provides probable cause based on the trash pulls, Defendant's previous juvenile adjudication, and his conversations with Dixon.

When an affidavit fails to discuss an informant's reliability or veracity, the information alone cannot be a substantial basis to establish probable cause.  *United States v. Becknell*, 601 F. App'x 709, 715 (10th Cir. 2015).  However, later information can provide sufficient independent corroboration of the informant's reliability or veracity.  *Id.*  Here, the surveillance detailed in the affidavit does not corroborate the anonymous tip – that Williams was selling drugs at 632 N. Baehr. Based on the affidavit, Agent Chaffee did not see any evidence of Williams selling drugs out of 632 N. Baehr.  And the trash pulls for 632 N. Baehr only show evidence of personal use of

marijuana.[4]  The cooperating defendants' statements, that Defendant and Williams sell drugs, were also not corroborated by the surveillance on 632 N. Baehr.  Therefore, the court finds that the information cannot support a finding of probable cause.

### 2.  Conversations with Dixon

Next, Defendant argues that the allegations regarding Defendant's conversations with Dixon are stale and provide no nexus to 632 N. Baehr.  Although the government argues that Defendant's discussions with Dixon support the finding of probable cause, the government makes no effort to discuss Defendant's arguments regarding staleness and the lack of connection to the residence.  Reviewing the affidavit, the only date provided regarding Defendant's conversations with Dixon is February 2017.  Around that time period, which was approximately 20 months earlier, a drug ledger showed that "9t," whom Agent Chaffee believes to be Defendant, owed Dixon money for drugs.  The affidavit is silent as to whether Agent Chaffee believes that this purchase, for $1750, was for personal use or for resale.

As discussed, probable cause cannot be based on stale information.  "The determination of whether information is stale depends on the nature of the crime and the length of criminal activity, not simply the number of days that have elapsed between the facts relied upon and the issuance of the warrant."  *United States v. Bautista-Meza*, No. 14-10016-01-EFM, 2014 WL 2158408, at *4 (D. Kan. May 23, 2014) (citation omitted).  "[W]hen an individual is suspected of engaging in criminal activity that is continuous and ongoing, the passage of time becomes less critical."  *Id.* Here, this purchase of suspected narcotics from Dixon, a known drug dealer, is an isolated transaction that provides no additional context to the court.  Agent Chaffee does not state in his

---

[4] Although the trash pulls for the trash cans of 630 N. Baehr could support a finding that someone at 630 N. Baehr is selling methamphetamine, the parties agree that these statements cannot support a finding of probable cause at 632 N. Baehr which is a separate residence.

affidavit that this purchase is for personal use or that Defendant had purchased this for resale or that the purchase was for marijuana.  Although the passage of time becomes less critical if there is ongoing criminal activity, the court cannot conclude from this statement in the affidavit what exactly transpired in February 2017.  Moreover, as pointed out by Defendant, there is no evidence that he was residing at 632 N. Baehr in February 2017 and no evidence that he had been selling drugs out of the residence.  Therefore, this information does not provide a substantial basis for probable cause for the warrant to search 632 N. Baehr.  The information is stale and was not refreshed by the trash pulls which only found evidence of personal use of marijuana.  *See United States v. Roach*, 582 F.3d 1192, 1202 (10th Cir. 2009) (finding that the defendant's admission "one and a half years before issuance of the warrant" regarding his previous criminal conduct in earlier years could not support a finding that a "prior course of criminal conduct is ongoing.")

### 3.    Defendant's criminal history and the trash pulls

Finally, the court is left with the two trash pulls and Defendant's criminal history.  The government makes no argument that Williams' connection to the residence is sufficient to establish probable cause to search 632 N. Baehr.  And, based on the finding that the anonymous tip that Williams was selling drugs out of the 632 N. Baehr residence was not corroborated by the investigation detailed in the affidavit, Williams' connection to 632 N. Baehr is not sufficient to find probable cause.

Turning to the criminal history, Defendant has a single criminal conviction related to possession of marijuana.  That conviction was eight years old at the time of the application.  The government argues that this juvenile conviction and the trash pulls are sufficient to show probable cause, but it does not cite to any authority that would support this position.  The isolated juvenile

conviction is too stale to be refreshed by the trash pulls that occurred several years later.  *See Roach*, 582 F.3d at 1201-02 (convictions that were several years old were stale).

With respect to the trash pulls, Defendant argues that the November trash pull was stale and the December trash pull is not sufficient to establish probable cause.  Although Defendant does not specifically attack the appropriateness of the trash pull, the court finds that law enforcement's conduct in taking the garbage did not violate the Fourth Amendment.  The Supreme Court and the Tenth Circuit have held that an individual has no reasonable expectation of privacy in items placed in trash bags "left on or at the side of a public street."  *See United States v. Timley*, 338 F. App'x 782, 787 (10th Cir. 2009) (citing *California v. Greenwood*, 486 U.S. 35, 40-41 (1988); *United States v. Long*, 176 F.3d 1304, 1307-09 (10th Cir.1999)).  Here, based on the evidence at the hearing, the trash bags were placed in the trash can which was placed next to the mailbox and at the curb of the street.  Therefore, the court finds that the trash can was not placed within the curtilage of the home and law enforcement did not violate the Fourth Amendment in taking the trash on November 19 and December 17.  *See id.*[5]

Turning to Defendant's argument that the November 19 trash pull is stale, Defendant's primary position is that the pull was more than 30 days prior to the warrant being issued.  As discussed herein, however, the court does not merely view the passage of days.  Rather, the court looks at the nature of the crime and length of criminal activity.  Defendant cites to *Roach* in support of his argument that the November 19 trash pull is stale.  (Doc. 28 at 13-14.)  *Roach*, however, does not specifically involve trash pulls.  The information in *Roach* regarding the defendant's gang activity was several years old and the Tenth Circuit held that it was not refreshed by the defendant's

---

[5] Moreover, even if the trash can was within the curtilage of the home, Defendant has the burden to show a reasonable expectation of privacy in the trash bags at issue and he has made no attempt to do so.  *Timley*, 338 F. App'x at 787-88.

admission a year and a half prior to the application of the search warrant. *Roach*, 582 F.3d at 1201-02. Here, we are talking about a trash pull that occurred approximately 31 days prior to the application of the warrant. Moreover, another trash pull occurred only three days prior to the application for the warrant and again located evidence of marijuana.[6] While the first trash pull may have been stale if viewed in isolation, the second trash pull sufficiently refreshed any potential staleness of the first pull and supports the conclusion that evidence of a crime, possession of marijuana, is likely to be found in the residence that is connected to the trash can. Therefore, the court finds that the November 19 trash pull is not stale given the subsequent trash pull on December 17.[7] *See United States v. Sanders*, No. 12-10202, 2013 WL 2254503, at *2 (D. Kan. May 22, 2013) (finding that two trash pulls twenty-two days apart were not stale because they both revealed similar evidence and the second trash pull strengthened the connection between the trash and the residence).

Next, Defendant argues that a small amount of marijuana is insufficient to establish probable cause. However, the Tenth Circuit has rejected the argument that a trash pull showing evidence of personal use is insufficient to find probable cause. *See United States v. Jenkins*, 819 F. App'x 651, 660–61 (10th Cir. 2020). In *Jenkins*, the Tenth Circuit cited *United States v. Colonna*, 360 F.3d 1169, 1173, 1175 (10th Cir. 2004), *overruled on other grounds by United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), with approval on this issue.

In *Colonna*,

the defendant argued that evidence a deputy found during a single trash pull—'two burnt roach ends of suspected marijuana cigarettes, a 'twist' torn from the corner

---

[6] Defendant does not argue in his motion that the December 17 trash pull was stale. Because the December 17 trash pull occurred only three days prior to the application of the search warrant, it was not stale. *See United States v. Jenkins*, 819 F. App'x 651, 661, n. 16 (10th Cir. 2020).

[7] The only other authority cited by Defendant with respect to this argument is *United States v. Bennett*, No. 08-CR-192, 2008 WL 4682665 (E.D. Wis. Sept. 22, 2008). *See* Doc. 28 at 14-15. This authority is not persuasive because it is out of district and involves a single trash pull. The court also notes that the Wisconsin court denied the motion to suppress under the good faith exception. *Id.* at *5-6.

of a plastic baggie, a plastic baggie with a corner torn from it, and an empty container of Zig Zag cigarette papers—showed 'only personal use of marijuana by someone in the residence[.]'  He asserted 'that personal use alone does not justify the search of a home.'  [*Colona*, 360 F.3d] at 1175. Rejecting that argument, we concluded that the evidence showed that someone in the residence was using drugs, an act that in turn supported 'a "fair probability that contraband or evidence of a crime will be found in a particular place."' *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 [] (1983)); *see also id.* at 1174 (noting that probable cause existed without other statements in the deputy's affidavit because 'the assertions concerning the evidence obtained from the trash [pull] support[ed] probable cause').

*Jenkins*, 819 F. App'x at 660.

The Tenth Circuit then stated that out-of-circuit authority also supports the conclusion that a single trash pull showing marijuana consistent with personal use was sufficient to establish probable cause.  *Id.* (citing *United States v. Briscoe*, 317 F.3d 906, 907–08 (8th Cir. 2003)).  The Tenth Circuit recognized that some recent "cases have reasoned that more than a single trash pull is needed to support probable cause, particularly when the trash pull uncovers a small quantity of drugs."  *Id.* at 660-61.  The cases cited by the Tenth Circuit were from the Fourth, Sixth, and Seventh Circuits, including *United States v. Leonard*, 884 F.3d 730, 734–35 (7th Cir. 2018).  *See id.* at 661, n. 15.  The Tenth Circuit reasoned that even if more than a single pull was required in light of recent out-of-circuit authority then that was satisfied in *Jenkins* because of the defendant's ongoing drug prosecution.  *Id.* at 661.  Here, if the trash pulls are sufficiently connected to 632 N. Baehr, then **two** trash pulls evidencing marijuana use is sufficient to establish probable cause because those two trash pulls would lead a court to conclude a "fair probability that contraband or evidence of a crime will be found in a particular place."'  *Id.* at 660; *see also Leonard*, 884 F.3d at 734–35 (7th Cir. 2018) (finding that two trash pulls testing positive for marijuana were sufficient standing alone to establish probable cause).  "While one search turning up marijuana in the trash might be a fluke, two indicate a trend." *Leonard*, 884 F.3d at 734.

Defendant further argues, however, that the affidavit does not connect the trash can searched to the residence.  There must be a "requisite nexus for the purpose of issuing a search warrant, which, again, only requires inferences reasonably drawn from the 'evidence connecting a defendant's suspected activity to his residence.'"  *See United States v. Timley*, 338 F. App'x 782, 790 (10th Cir. 2009) (citation omitted).  Here, the affidavit only states that the trash searched was for 632 N. Baehr.  The affidavit does not detail how the affiant knew that the trash being searched was in fact the trash can belonging to 632 N. Baehr and the government does not provide any authority to suggest that Agent Chaffee's conclusory statement regarding the ownership of the trash can is sufficient to establish a nexus.  In *Timley*, for example, the Tenth Circuit held that the nexus was present in that case because the affidavit detailed that the trash was obtained "from the alley directly behind" the residence and it contained items connecting the defendant to the residence.  *Id.*  Here, the court is left with a conclusory statement regarding the ownership of the trash can.  Although the court has heard evidence sufficiently connecting those trash pulls to 632 N. Baehr, that evidence is not contained in the application for the search warrant.  "If the [magistrate] judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners."  *United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United States v. Beck*, 139 F. App'x. 950, 954 (10th Cir. 2005)).

That said, the affidavit does state that law enforcement was conducting surveillance at 632 N. Baehr.  That statement, in connection with the affirmative statement that the trash can belonged to 632 N. Baehr, could lead the reviewing magistrate judge to conclude that Agent Chaffee knew, based on the surveillance, that the trash can being searched on those days did belong to 632 N.

14

Baehr.  However, the affidavit does not explain exactly how Agent Chaffee determined that the trash can belonged to 632 N. Baehr.  In *Roach*, the Tenth Circuit was faced with a similar issue. In that case, the only connection to a defendant, who was allegedly involved in gang crimes, and the premises was a general statement in which the affiant identified the addresses of several individuals.  *Roach*, 582 F.3d at 1202.  Although the affiant identified numerous investigatory techniques used to determine the addresses for multiple individuals, the affiant did not provide any facts to describe the method used to tie the defendant to the residence.  *Id.* at 1202-03.  The circuit explained that "[p]robable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity."  *Id.* at 1202 (quoting *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir.1998)).  There must be facts and not police summaries of those facts to support the requisite  "nexus between the contraband to be seized or suspected criminal activity and the place to be searched."  *Id.* at 1202-03.  The statements that the trash can searched on November 19 and December 17 was the trash can for 632 N. Baehr are conclusory. Agent Chaffee failed to state facts that support the conclusion that the trash can was in fact the trash can for the residence at 632 N. Baehr.  Although there are other instances in which the facts in the affidavit are supported by reference to the surveillance, Agent Chaffee did not support his conclusion regarding the trash can by stating that he learned this fact from surveillance.  As such, the court is unable to determine whether the method employed to verify that the trash can belonged to 632 N. Baehr was successful and sufficient.  *Id.*  This is fatal to the probable cause determination. *Id.*

Therefore, the court finds that the search warrant was not supported by probable cause and turns to the good faith exception.[8]

**B.** *Franks*

Under *Franks*, evidence discovered pursuant to a search warrant is excluded when "(1) a defendant proves by a preponderance of the evidence 'the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) ... after excising such false statements and considering such material omissions ... the corrected affidavit does not support a finding of probable cause.'" *United States v. Smith*, 846 F. App'x 641, 648 (10th Cir. 2021) (quoting *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010)).

Although Defendant challenged Agent Chaffee's statements in the affidavit pertaining to the anonymous tip, confidential informants, social media/cell phone data, and statements regarding the trash pulls under *Franks*, Defendant's challenge fails because the court has concluded that these statements in the affidavit are not sufficient to establish probable cause as discussed herein. Therefore, Defendant cannot show that any alleged false statement or omission is material. *See Franks*, 438 U.S. at 155-56. "An omission is material if it is so probative as to negate probable cause." *United States v. Gehrmann*, 731 F. App'x 792, 799 (10th Cir. 2018) (citation omitted). Moreover, after hearing Agent Chaffee's testimony during the hearing, the court finds that Agent Chaffee did not make any false statements in the affidavit nor did he knowingly or recklessly fail

---

[8] As stated during the evidentiary hearing, review of the affidavit was difficult in this case because it referred generally to the "subject premises," which included both sides of the duplex. (Doc. 37 at 2.) For example, the affidavit included statements indicating that there was evidence of possession with intent to distribute at the "subject premises." But that evidence was limited to 630 N. Baehr and was based on trash pulls from that residence and surveillance of multiple individuals coming to that residence for short periods of time. The affidavit made it difficult, at times, to determine what location was being discussed. *See id.* ¶ 8 ("your affiant has observed numerous WPD documented Crips gang members **at that location**." (emphasis supplied)). The better practice would be to limit discussion in the affidavit to the particular residence at issue and, where it is necessary to include discussion about another residence, to clearly identify which residence is at issue and not use a general term to indicate more than one residence.

to include material facts.  The court will now turn to good faith and address the evidence concerning the alleged false statements in the context of good faith.

### C.     Good Faith

The exclusionary rule may be applied when a Fourth Amendment violation occurs.  The purpose of the rule is "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]"  *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).  It is in effect a "disincentive for law enforcement to engage in unconstitutional activity" and its application turns on whether it will "be an effective deterrent against future Fourth Amendment violations."  *Id.*  "Even when exclusion would provide deterrence, courts must further inquire whether the benefits of that deterrence outweigh the substantial social costs — of excluding relevant and incriminating evidence of wrongdoing."  *Id.*  (internal quotation and citation omitted). For the rule to apply, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.* (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).  Using this test, the Supreme Court has concluded that evidence should not be suppressed when a law enforcement officer relies in objective good faith on a warrant issued by a detached and neutral magistrate even though the warrant is later determined to lack probable cause.  *Id.*  (quoting *Leon*, 468 U.S. at 922).

The government urges the court to apply the good faith exception to exclusion under *Leon* and deny Defendant's motion to suppress the evidence seized in this case.  The good faith exception, however, does not apply in the following situations: (i) "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his 'reckless disregard of the truth;'" (ii) the issuing magistrate wholly

abandoned his "judicial role;" (iii) the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (iv) the "warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (internal quotation marks omitted) (quoting *Leon*, 468 U.S. at 923).

When making the good faith determination, the court is "confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant, as well as information relating to the warrant application process." *Knox*, 883 F.3d at 1272. Law enforcement officials "are presumed to have a reasonable knowledge of the law and we determine good faith in this context by considering whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (internal citations and quotations omitted).

Defendant argues that the good faith exception does not apply here because the magistrate was misled and the affidavit is so lacking in indicia of probable cause as to render official believe in its existence entirely unreasonable. (Doc. 28 at 32.) With respect to the first point, Defendant refers to his arguments raised in support of the *Franks* hearing.

Defendant first argues that Agent Chaffee misled the magistrate by stating, in paragraph eight, that the anonymous tip was received in September 2018. Defendant argues that it was in fact received in 2017. Agent Chaffee testified that the tip was received by the Wichita Police Department in September 2018 and that he had initially made a typographical error in using the 2017 date in an earlier police report. Defendant offered no further evidence that this statement

was false at the hearing.  Based on the evidence, the court finds that the statement regarding the date of the tip was not false.

Defendant further argues that Agent Chaffee misled the magistrate by failing to specify when Defendant moved into 632 N. Baehr and when Calvin Williams moved out.  Based on Agent Chaffee's police report, surveillance showed that Defendant moved in around November 12, 2018, and Williams appeared to move out on that date.  The affidavit in support of the search warrant states that "During surveillance, your affiant learned Montrez BROWN is the primary resident of 632 N. Baehr and Calvin WILLIAMS Jr. will frequent the residence, even during times when Montrez BROWN is not at the residence."  (Doc. 37 ¶ 8.)  This paragraph does not include any false statements and it was an accurate statement on the date of the application for the search warrant based on Agent Chaffee's testimony.  While it does not contain the date that surveillance observed Defendant had moved into the residence, it accurately states that Agent Chaffee learned that he was the primary resident through surveillance and, notably, Defendant was residing in the home at the time of the trash pulls.

Next, paragraph thirteen of the affidavit states that Agent Chaffee had reviewed social media and cell phone content from some of Defendant's associates, including Erik Dixon.  There were numerous conversations between Defendant and Dixon discussing the business of selling drugs although dates of the conversations were not specified.  Agent Chaffee also observed a picture of a drug ledger dated February 2017.  (*Id.* at ¶ 13.)  Defendant argues that this paragraph contains false statements because "virtually all of the conversations took place in 2015, 2016, and 2017." (Doc. 40 at 2.)  Defendant, however, does not explain how any statement in this paragraph is false.  Moreover, Agent Chaffee did include the date of February 2017 with respect to the drug ledger.  Based on the evidence submitted to the court, the conversations between Defendant and

Dixon occurred between January 2015 and November 14, 2017.  Def. Exh. 8.  Other social media and cell phone content were dated between January 2015 and February 2018.  Def. Exhs. 3-7; 9-10.  Defendant argues that Agent Chaffee misled the magistrate by failing to identify the dates of the actual conversations.  The affidavit, however, is entirely accurate in that the conversations in fact discuss drugs and Defendant does not dispute this representation.  And, by specifying a conversation in February 2017, Agent Chaffee has provided a time period for the conversations.  Therefore, the court finds that Agent Chaffe has not submitted a false statement with respect to paragraph 13.  Moreover, Agent Chaffee testified that the general statements in this paragraph without a date context were provided as background and that it was his practice to include dates if that information was being used to establish probable cause.  The court finds that Agent Chaffee's testimony was credible.

Defendant further argues that paragraph fourteen contains false or misleading statements regarding cooperating defendants.  In that paragraph, Agent Chaffee stated that cooperating defendants had been interviewed and identified various individuals, including Defendant, as being involved in the sale of drugs.  Defendant argued that it was potentially false because defense counsel averred that at least two cooperating defendants did not indicate that Defendant was involved in drug sales.  At the *Franks* hearing, however, Agent Chaffee testified that the cooperating defendants did name Defendant as being involved in drug sales and that those interviews occurred in 2017 and 2018.  Defendant failed to introduce any evidence that would contradict Agent Chaffee's testimony.

Finally, Defendant asserts that Agent Chaffee submitted false statements in connection with the trash pulls because there was no indication about the quantity of marijuana or whether the substance was tested.  The evidence at the hearing, however, leads the court to conclude that the

affidavit did not include any false statements.  Agent Chaffee testified that he did in fact field test the marijuana on both trash pulls.  He further testified that he believed the substance in both pulls to be marijuana based on his experience.  With respect to the quantity, Agent Chaffee testified that the quantity was not indicated because it was too small to weigh.  However, Agent Chaffee testified that both trash pulls revealed the remains of a smoked marijuana blunt and that the second trash pull revealed a baggie with marijuana residue.  Agent Chaffee testified that this baggie is consistent with a bag of marijuana purchased for personal use.  Based on Agent Chaffee's testimony, the court finds that his statements regarding the trash pulls were accurate and he did not submit false testimony to the magistrate nor did he mislead the magistrate by omitting any information.

Next, Defendant argues that the good faith exception should not be applied because the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  (Doc. 28 at 32) (quoting *Roach*, 582 F.3d at 1203).  "For good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity."  *Gonzales*, 399 F.3d at 1231 (emphasis in original).  When such a minimal nexus is absent, "the affidavit and resulting warrant are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Id.* (quoting *Leon*, 468 U.S. at 923).  The test for good faith requires "significantly less" than a finding of probable cause.  *United States v. Welch*, 291 F. App'x 193, 202 (10th Cir. 2008).  The test for good faith requires "merely a minimal nexus."[9]  *Id.*  Moreover, the "staleness test does not apply with equal vigor to the minimal nexus test" when the court is considering good faith.  *Id.*

---

[9] The court notes at the outset that this question would be a simple one could the court consider Agent Chaffee's testimony at the hearing.  Based on that testimony, it is clear that law enforcement had a sufficient basis to determine that the trash searched on November 19 and December 17 belonged to 632 N. Baehr.  In *Knox*, however, the Tenth Circuit interpreted *Leon* to limit a reviewing court to the information before the magistrate judge when considering good faith, joining the Seventh and the Ninth Circuits in its decision.  883 F.3d 1272.  The Fourth, Eighth, and Eleventh Circuits, however, allow courts to consider "uncontroverted facts known to the officers who executed the warrant but inadvertently not disclosed to the issuing judge."  *Id.* at 1271.  In this case, Agent Chaffee did not include

Defendant first cites to *United States v. Walker*, 58 F. Supp. 3d 1180 (D. Kan. 2014) in support of his argument that the affidavit does not even establish a minimal nexus. That case, however, is distinguishable. In *Walker*, the government argued that the defendant's connection to the residence was sufficient to establish probable cause because of his extensive arrest history for narcotics. The affidavit, however, failed to connect the defendant to the residence in that it failed to state that the defendant had been seen at the residence at the time law enforcement applied for a warrant in February 2013. Rather, the affidavit stated that his vehicles were present at that residence during a 2007 investigation, which the court determined was too remote in time, especially in light of additional information in the affidavit that stated he was at a different residence in 2010. *Id.* at 1185. The affidavit also discussed trash pulls that were conducted as part of the investigation. The items located in the trash bags, multiple sandwich baggies that tested positive for cocaine, did not provide probable cause to search the residence because the affidavit failed to connect the trash can to the residence. Notably, the affidavit described the location of the trash can as approximately five blocks away from the residence being searched. As a result, the court found that the affidavit lacked probable cause because it was "left with a trash pull of a cart in which its location is unidentifiable[.]" *Id.* at 1186. With respect to good faith, the government argued that the exception should apply due to the officer's experience, training, and the defendant's extensive arrest history. *Id.* The court found that the affidavit failed to establish even a minimal nexus between the defendant and the residence. The government did not argue that the trash pull evidence provided the minimal nexus required for good faith. *Id.*

---

this information in his affidavit but the court has no knowledge as to whether he presented any additional information to the magistrate and, therefore, must presume that this is new information that the court cannot consider under *Knox*. *Id.* at 1272.

Here, while the court has determined that the affidavit lacks probable cause, a good faith determination requires significantly less.  Based on the affidavit, it is clear that law enforcement conducted a lengthy investigation into both 630 and 632 N. Baehr and the individuals who were seen residing in those residences and the frequent visitors to 630 N. Baehr.  This investigation on the residence began after receiving the anonymous tip in September 2018 that Williams was selling drugs at 632 N. Baehr.  Although that tip was not verified, the affidavit details several facts that were observed through the surveillance.  Through surveillance, law enforcement identified that Defendant was the resident of 632 N. Baehr.  Law enforcement also observed that Williams would frequent the residence even when Defendant was not in the residence.  Although the affidavit does not explicitly state how law enforcement determined that the trash can belonged to 632 N. Baehr, it details the dates of the trash pulls for 632 and 630 N. Baehr.  Those trash pulls were done on different days of the week, leading to the conclusion that the trash pick up day for the residences were different.  Based on the dates in the affidavit, the trash pickup day for 632 N. Baehr was on Monday, as both November 19 and December 17 were Mondays, and the trash pickup day for 630 N. Baehr was on Tuesday, as both November 20 and December 11 are on Tuesdays.  Those facts support an inference that law enforcement was able to distinguish the trash cans of the two residences.  Although the affidavit does not explicitly state how law enforcement gained knowledge that the trash can searched on November 19 and December 17 belonged to 632 N. Baehr, it can be inferred that this was determined through the surveillance.  The court finds that there is a minimal nexus between the criminal activity discovered in the trash pulls on November 19 and December 17 and the residence of 632 N. Baehr.  As such, the affidavit and resulting warrant are not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Gonzales*, 399 F.3d at 1231.  Moreover, the staleness test does not apply

with equal vigor to the minimal nexus test and the affidavit stated that Defendant had purchased drugs from a known drug dealer in February 2017.  *Welch*, 291 F. App'x at 201–02.  Law enforcement's knowledge of Defendant's prior drug purchase and association with Dixon, coupled with the marijuana in the trash pulls, further supports the finding of a minimal nexus.  It was not illogical for the magistrate judge to suspect that criminal activity was occurring at 632 N. Baehr.  *Id.* at 202; *see also Roach*, 582 F.3d at 1204-05 (finding good faith even though the affidavit lacked facts connecting the residence to the defendant based on the affidavit's discussion of the investigation); *United States v. Smith*, 846 F. App'x 641, 646-47 (10th Cir. 2021).  It was not a "bare bones" affidavit.  *Roach*, 582 F.3d at 1204.

Defendant also cites to another case in this district, *Bautista-Meza*. 2014 WL 2158404, in support of his position that the good faith exception should not be applied.  (Doc. 28 at 33-34.)  In that case, the only evidence linking the residence to drug activity was "very stale information" that a drug purchase had occurred at the residence.  *Bautista-Meza*, 2014 WL 2158404 at *6.  The only recent facts included that the defendant was a felon and found with a weapon during a car stop.  While the affidavit stated that the officer believed that drugs were in the residence because methamphetamine dealers commonly store their drugs in their residence, there were not any facts connecting the residence to the sale of methamphetamine.  *Id.*  *Bautista-Meza* is distinguishable from this case.  Here, there are recent facts connecting the residence to unlawful activity.  Therefore, the affidavit is not completely devoid of facts as to render official belief in the existence of probable cause entirely unreasonable.

The court finds that *Leon*'s good-faith exception applies and the evidence seized in this case will not be suppressed.  This outcome is entirely consistent with the Supreme Court's admonition that the purpose of suppression is to deter the police from future unlawful conduct,

and to provide a disincentive and deterrent effect against future Fourth Amendment violations. *Knox*, 883 F.3d 1262, 1273 (quoting *Calandra*, 414 U.S. at 347). There is absolutely no indication that law enforcement officers in this case did anything sufficiently nefarious to warrant the high societal cost of suppressing relevant evidence. At most, this was a case where the officer simply failed to include enough of the relevant information of which he was aware to meet the threshold for probable cause on the face of the warrant affidavit. In spite of that, the affidavit was sufficient for good faith. That is enough.

### III.     Conclusion

Defendant's motion to suppress (Doc. 27) is DENIED.

IT IS SO ORDERED. Dated this 16th day of February 2022.

  s/ John W. Broomes        
JOHN W. BROOMES        
UNITED STATES DISTRICT JUDGE
